IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JERRY L. ANDERSON,

        Petitioner,        OPINION AND ORDER

     v.             13-cv-792-slc

JUDY P. SMITH, Warden,
Oshkosh Correctional Institution,

        Respondent.

---

   State inmate Jerry L. Anderson has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction in Dane County Case No. 08CF1778.  The respondent has filed an answer and both parties have submitted briefing. Having read the pleadings, the briefs and the records from the state court proceedings, I conclude that the petition must be denied.  Petitioner has failed to meet his high burden of showing that the state court of appeals unreasonably applied federal law or made an unreasonable determination of fact in rejecting his claims and affirming his convictions.

BACKGROUND

   In Dane County Case No. 08CF1778, Anderson was charged with false imprisonment; strangulation and suffocation; second-degree recklessly endangering safety and multiple counts of battery.  The charges stemmed from allegations that Anderson savagely beat his "on-again-off-again" girlfriend, who was homeless and high on drugs at the time of the assault.  Soon after the victim reported the assault, during which Anderson punched her, kicked her, stabbed her with a screwdriver and strangled her into unconsciousness, the victim was jailed for a probation violation.  The victim later released to a shelter for battered women.  Soon thereafter, Anderson

was arrested and released on bond.  The victim then attempted to recant her allegations, stating that she was afraid of Anderson.  At a preliminary hearing and again at trial the victim testified that she had feelings for Anderson and claimed that she sustained some of her wounds in a fight with "some girl," while other wounds were self-inflicted or caused by her drug use.  The State presented evidence that the victim had previously told at least eight other witnesses that Anderson had violently assaulted her.  The State also presented forensic evidence, including a screwdriver stained with the victim's blood, which was recovered from Anderson's apartment, where the beating had occurred.  Based on this evidence, the jury found Anderson guilty as charged and the circuit court imposed an aggregate sentence of 20 years, consisting of 15 years' initial confinement and five years of extended supervision.

Anderson now petitions for relief under 28 U.S.C. § 2254 from this conviction.  Anderson contends that: (1) minorities were excluded from the jury pool, violating his constitutional right to a jury drawn from a fair cross-section of the community; (2) the state court record was defective, denying him the right fully to present his arguments on appeal; (3) a detective who testified for the State had bribed the victim by placing money into her jail account, then falsely testified that the money came from an outreach agency; (4) the prosecutor engaged in misconduct by pursuing charges against Anderson despite inconsistencies in witness testimony; and (5) Anderson's trial counsel was ineffective because he failed to raise these issues and because he did not adequately prepare for trial.

The Wisconsin Court of Appeals rejected these contentions and affirmed Anderson's the conviction in an unpublished opinion.  *See State v. Anderson*, 2012 WI App 73, 342 Wis. 2d 248, 816 N.W.2d 350.  Thereafter, the Wisconsin Supreme Court summarily denied his petition for review.  *See State v. Anderson*, 20120 WI 115, 344 Wis. 2d 302, 822 N.W.2d 880.

2

OPINION

**I.  Habeas Corpus Standard of Review**

To the extent that Anderson's claims were addressed on the merits by the Wisconsin Court of Appeals, Anderson must establish in this court that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or reaches a different conclusion than the Supreme Court based on materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000).  A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case.  *See Brown v. Payton*, 544 U.S. 133, 141 (2005).

The standard outlined in § 2254(d)(1) is exacting and "highly deferential," *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 15 (2013), demanding that state courts be given "the benefit of the doubt." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786 (2011).  Relief is authorized only in cases "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Richter*, 131 S. Ct. at 786.  To prevail, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.  In addition to the "formidable barrier" posed by this standard, *Titlow*, 134 S. Ct. at 16, the petitioner bears the burden of rebutting the state court's factual findings "by clear and

3

convincing evidence." 28 U.S.C. § 2254(e)(1).  Alternatively, a petitioner must show that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(2).

## II.  Fair Cross-Section Claim

Anderson contends that he is entitled to federal habeas corpus relief because he was denied his constitutional right to a trial before a fair cross-section of the community.   In particular, Anderson, who is African-American, claims that he was denied the right to a trial before a jury consisting of members of his race.

There is no constitutional right to have a petit jury that represents a cross-section of the community.  *See Holland v. Illinois*, 493 U.S. 474, 480 (1990); *see also Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) ("[W]e impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.").  However, the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury drawn from a source that fairly represents a cross-section of the community.  *See Taylor*, 419 U.S. at 538; *Lockhart v. McCree*, 476 U.S. 162, 173 (1986).  In *Duren v. Missouri*, 439 U.S. 357 (1979), the Supreme Court articulated the showing necessary to establish a *prima facie* violation of the Sixth Amendment's fair cross-section requirement: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process." *Id*. at

4

364.

Anderson raised his fair cross-section claim on direct appeal and the Wisconsin Court of Appeals rejected it. That court found that Anderson failed to satisfy the third prong of the *Duren* test by establishing systematic exclusion in the jury selection process:

> Anderson contends that African–Americans were excluded from his jury pool, violating his constitutional rights. Anderson cites *Duren v. Missouri*, 439 U.S. 357, 99 S. Ct. 664, 58 L. Ed.2d 579 (1979), for the proposition that systematic exclusion of a distinct group from jury pools violates the constitutional requirement that the jury represent a fair cross-section of this community. Anderson asserts that Dane County systematically excludes African–Americans from jury pools by using randomized lists of drivers' licenses and state identifications from the Department of Transportation to select potential jurors, resulting in the absence of African–Americans available for his jury. He argues that it has been established that this system results in an underrepresentation of minorities on juries, and asserts that Dane County's continued use of a system known to result in underrepresentation is systematic exclusion. We disagree.
>
> The constitution requires that the "'jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.'" *Id*. at 363–64 (citation omitted). Thus, to establish a *prima facie* violation of the right to a representative jury, a defendant must show that: (1) the excluded group is a distinctive group in the community; (2) representation of the group in jury pools is not fair and reasonable in relation to the number of the people in that group in the community; and (3) the underrepresentation is due to systematic exclusion in the jury-selection process. *Id*. at 364. The problem with Anderson's argument is that he has not established the third part of the test, that the underrepresentation of African–Americans in his jury pool was due to systematic exclusion in the jury process. While systematic exclusion may be established by showing exclusion over time, *see Brown v. State*, 58 Wis. 2d 158, 165, 205 N.W.2d 566 (1973), Anderson merely asserts, without support, that juries in Dane County have been underrepresentative of minorities for years. The burden to prove underrepresentation over time is on the defendant, *see id*., and Anderson has not made that showing here.

5

*State v. Anderson*, 2012 WI App 73, ¶¶ 3-4, 342 Wis. 2d 248, 816 N.W.2d 350.

Here, as in state court, Anderson asserts that Dane County juries have been under-representative of minorities for years. As support for this contention, Anderson references a public statement allegedly made by a Dane County supervisor, who supposedly commented that "[o]ur population is overly representative of minorities while our juries are under-representative of minorities." Anderson does not provide the date that this comment was made, its context or its place of publication. Thus, the statement does not constitute competent evidence for consideration on federal habeas corpus review. *See* Rule 7, Rules Governing Section 2254 Cases in the U.S. District Courts. To the extent that the alleged statement was not raised by Anderson previously, it may not be considered here because federal habeas corpus review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398 (2011). Even assuming, *arguendo*, that the statement is accurate, it does not establish the type of systematic exclusion at issue in *Duren*, which concerned a state law exempting women from jury service. Under these circumstances, Anderson has not demonstrated that the state court's decision to reject his claim was contrary to the Supreme Court's decision in *Duren*. *See Berghuis v. Smith*, 559 U.S. 314, 320-21 (2010) (rejecting a habeas petitioner's fair cross-section claim). Accordingly, Anderson is not entitled to relief on this claim.

III.        **Errors in the Transcript**

Anderson contends that the state court record was defective, which denied him the right to fully present his arguments on appeal. The Wisconsin Court of Appeals rejected this claim as unsubstantiated:

> Anderson contends that the record is defective, denying him the opportunity to fully present his arguments on appeal. He contends that statements that were made at trial were not recorded in the transcript, and that a letter from his trial counsel confirmed that fact. However, the letter to Anderson from his trial counsel states only that counsel remembers the investigating detective testifying that she placed money in the victim's jail account, and that statement should be in the trial transcript. The detective's statement that she placed money in the victim's jail account appears in the trial transcript. To the extent that Anderson is asserting other statements are missing from the transcript or that the transcript is otherwise defective, we have no basis to disturb the circuit court's finding that the transcript was accurately prepared, as certified by the court reporter. *See State v. DeLeon*, 127 Wis. 2d 74, 82, 377 N.W.2d 635 (Ct. App. 1985) (explaining that review of circuit court factual findings as to dispute over transcript is reviewed under clearly erroneous standard).

*Anderson*, 2012 WI App 73, ¶ 5, 342 Wis. 2d 248, 816 N.W.2d 350.

Anderson had an opportunity to review the transcript at length with his defense counsel and the presiding judge during a hearing on post-conviction review, but he was unable to demonstrate any error. (Dkt. 16, *Hearing Trans*. at 9-90.) Anderson does not present any evidence that there are statements missing from the transcript or that there are any other deficiencies in the state court record. Therefore, the state court's finding that the transcript was accurately prepared is presumed correct for purposes of federal habeas corpus review. *See* 28 U.S.C. § 2254(e)(1). Anderson does not rebut the presumption that the court reporter

accurately transcribed the testimony given at his trial or show that the court of appeals' decision was an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(2).  It follows that he is not entitled to relief on this issue.

IV. **Bribery and False Testimony**

Anderson contends that a detective, who testified for the State, bribed the victim by placing money into her account in jail and then falsely testified that the money came from an outreach agency.  The Wisconsin Court of Appeals rejected this claim based on the detective's testimony that there was no bribe:

> Anderson contends that the detective bribed the victim by placing money into her account in jail and then falsely testified that the money came from an agency. However, the detective testified that she placed money into the victim's jail account to cover necessities, explaining that it was her experience that victims were better able to focus on upcoming trials when they had necessities. She also stated that she helped the victim locate housing through an agency. At the postconviction motion hearing, the detective again explained her action in providing money to the victim. The circuit court found the detective credible. We discern no basis to disturb the circuit court's order as to this issue. *See State v. Plank*, 2005 WI App 109, ¶ 11, 282 Wis. 2d 522, 699 N.W.2d 235 (explaining that it is the role of the circuit court to determine witness credibility).

*Anderson*, 2012 WI App 73, ¶ 6, 342 Wis. 2d 248, 816 N.W.2d 350.

The state court's findings are supported by the trial transcript, in which MPD Detective Maureen Wall testified that it was her practice to make sure that victims of domestic violence have essential items in the event that they are placed in jail:

> Q.      You were present for the [preliminary hearing] on October 1st of 2008?

8

A.      Yes, I was.

Q.      And after that prelim, and her testimony, did you go and talk to [the victim] on October 2nd and October 9th of 2008?

A.      Yes, I did.

Q.      Did you have a conversation about her testimony at the preliminary hearing?

A.      Yes, we did.

Q.      What did she tell you?

A.      She asked me if I understood why she lied at the preliminary hearing, and said that Jerry didn't beat her up, and I said, I did understand, because she had told me that she was terrified of him, and that he would come out and kill her or have his family kill her.

Q.      Did she tell you that she felt Jerry Anderson was the only one who would look out for her?

A.      Yes, she did.

Q.      Did she, while you're contacting her, have any items of, I guess, luxury in the jail?

A.      Well, when I went to speak with her, I went to ask her if she had had all her medical needs met, because she complained so much about her jaw hurting, and I asked her to have it X-rayed and re-checked, and I also wanted to make sure she had her needs met.

        One of the things I do with victims, and I found very helpful, is to try to get their basic survival needs met, so that they can - - they don't have to worry about those, and they can focus on the trial, if one is - - if they have to face a trial in the future.

        So I asked her if she had everything she needed, and was taken care of, and she said she was fine medically, and she told me she didn't have any place to live, and she was

worried about getting out of jail, where she would go, and she told me she didn't have any shampoo or soap, because she had left Jerry's house with nothing, just the clothes on her back. She didn't have any money.  She wanted to make a call to her mother, because it was her mother's birthday coming up.  So -- and she told me she was very cold because she didn't have socks or underwear when she arrived at the jail.

So that was when she asked me if I understood why she lied at the preliminary hearing, and that was when I told her  yes, I understood, and she said it wasn't only that reason, it was because - - it was because Jerry was the only one who would look out for her, and take care of her, and he had sent word to her, through his nephew, Daniel, that he would leave money on her jail books, and that he would give her money when she got out of jail, and a place to stay, and I told her, "Rachel, there's other people who will help you.  I will help you find a place to stay.  And I will see if they will let me leave you money on your jail books, so you can buy some soap, shampoo, and at least a pair of socks, and call your mother," and I eventually did secure her a place to stay, with the assistance of some outreach agencies, and left $20.00 on her books.

(Dkt. # 13, *Trial Trans.*, Dec. 11, 2008, at 285-87.)

Detective Wall testified similarly during a hearing on Anderson's motion for post-conviction relief.  (Dkt. # 16, *Hearing Trans*. at 96) (explaining that she put money in the victim's jail account "because she told me she was cold and hungry and she didn't have adequate clothing in the jail, and she didn't have any money to phone her mother, and she couldn't buy snacks in between meals").  The detective emphasized during that hearing that she "didn't ask anything" in return.  (*Id*. at 96-97.)

In rejecting Anderson's claim, the circuit court found Detective Wall's testimony credible.  Credibility determinations and other state court findings are presumed correct on

10

federal habeas review, unless the petitioner rebuts those findings with "clear and convincing evidence." *Woolley v. Rednour*, 702 F.3d 411, 426-27 (7th Cir. 2012) (quoting 28 U.S.C. § 2254(e)(1)).  A trial court, in particular, is in the best position to "observe the verbal and non-verbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." *Id*. at 427 (quoting *Murrell v. Frank*, 332 F.3d 1102, 1112 (7th Cir. 2003) (citation, emphasis, and internal quotation marks omitted)).

Anderson does not present any evidence that Detective Wall attempted to bribe the victim in exchange for testimony against Anderson, or that Detective Wall falsely claimed that the money came from an outreach agency.  Likewise, Anderson does not show that the Wisconsin Court of Appeals' decision to reject this claim was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(2).  Absent such a showing, Anderson is not entitled to relief on this claim.

## V. **Prosecutorial Misconduct**

Anderson contends that the prosecutor engaged in misconduct by pursuing charges against Anderson despite inconsistencies in witness testimony.  In particular, Anderson contends that the prosecutor acted improperly by pursuing charges after the victim recanted

11

her statement.  The Wisconsin Court of Appeals summarily rejected this claim, finding that

there was ample evidence adduced at trial to support the charges:

> Anderson asserts that the prosecutor engaged in
> misconduct by pursuing charges against Anderson despite
> inconsistencies in witness testimony. He asserts that it was
> clear that Anderson had not inflicted the harm on the victim,
> yet the State pursued the charges anyway. We disagree. There
> was evidence at trial that Anderson had caused the injuries to
> the victim, including prior statements by the victim to the
> investigating detective. On this record, we perceive no error by
> the State in pursuing the charges against Anderson.

*Anderson*, 2012 WI App 73, ¶ 9, 342 Wis. 2d 248, 816 N.W.2d 350.

Anderson cites no case law from the United States Supreme Court or elsewhere,

holding that a prosecutor may not pursue charges where a witness recants an earlier

statement.  To the contrary, the Supreme Court has recognized as a general principle that

prosecutors have substantial discretion to initiate and conduct criminal prosecutions.  *See*

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system, so long as the prosecutor

has probable cause to believe that the accused committed an offense defined by statute, the

decision whether or not to prosecute, and what charge to file or bring before a grand jury,

generally rests entirely in his discretion."); *see also United States v. Armstrong*, 517 U.S. 456,

464 (1996) (observing that separation of powers requires broad prosecutorial discretion

because federal prosecutors "are designated by statute as the President's delegates to help

him discharge his constitutional responsibility to 'take Care that the Laws be faithfully

executed'").

In Anderson's case, the State presented forensic evidence and testimony from eight witnesses who supported the victim's original statement to police, identifying Anderson as the individual who assaulted her.  Although the victim later recanted, the State presented evidence that she did so because she was in fear of Anderson.  Based on this record, Anderson fails to show that the prosecutor engaged in misconduct by pursuing the charges against him.

Absent a showing that the state court has unreasonably applied "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), habeas corpus relief is unavailable.  *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'") (emphasis added); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . 'it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.'").

## VI. **Ineffective Assistance of Counsel**

Anderson contends that his trial counsel was ineffective for failing to raise the above-referenced issues or to adequately prepare for trial.  Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000).  "Unless a defendant makes

13

both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

The record reflects that the circuit court held a hearing on the allegations of ineffective-assistance in Anderson's post-conviction motion. Anderson's trial attorney testified at length during that hearing, defending her efforts and strategic decisions. (Dkt. # 16, *Hearing Trans*. at 9-90.) The circuit court found that defense counsel's testimony was credible and that her performance was not deficient for purposes of the *Strickland* standard. (Dkt. # 16, *Hearing Trans*. at 149, 157-63.)

The Wisconsin Court of Appeals also rejected Anderson's ineffective-assistance claim after applying the standard found in *Strickland*:

> Finally, Anderson contends that his trial counsel was ineffective by failing to pursue the errors he claims above and being unprepared for trial. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984) (counsel is ineffective if counsel's performance is deficient and that deficient performance prejudiced the defense). To establish ineffective assistance of counsel, Anderson must show that: (1) counsel's performance was deficient in that it fell outside the range of professionally competent assistance; and (2) counsel's performance was prejudicial in that there is a reasonable probability that the outcome of the trial would have been different absent counsel's errors. *Id*. at 689, 694. Anderson has failed to establish that his trial counsel's performance was deficient, and thus his claim of ineffective assistance of counsel fails.

> First, as we have explained, Anderson's specific claims of error that he believes counsel should have pursued lack merit. Additionally, the circuit court held a postconviction motion hearing and took testimony by Anderson's trial counsel as to her trial strategy and preparation. Counsel testified that she pursued a strategy of attacking inconsistencies in the victim's original

14

> statements reporting that Anderson had inflicted her injuries and focusing on the victim's testimony that she lied when she made those statements. Counsel stated she spent close to a hundred hours preparing for Anderson's trial. The circuit court found trial counsel credible. Because the record establishes that counsel did not commit errors so serious that she was not acting as reasonably competent counsel, her performance was not constitutionally deficient. We affirm.

*Anderson*, 2012 WI App 73, ¶¶ 10-11, 342 Wis. 2d 248, 816 N.W.2d 350.

To the extent that Anderson's ineffective-assistance claims were rejected by the state court, the central question is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable — a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)). In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id*. (citing *Youngblood v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, this standard is "doubly deferential" on habeas corpus review. *Id*.; *see also Richter*, 131 S. Ct. at 788 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted).

The hearing on Anderson's motion for postconviction relief reflects that the trial court considered all of Anderson's proposed arguments and found them to be without merit. (Dkt. # 16, *Hearing Trans*. at 9-90, 149, 157-63.) Anderson, who makes only conclusory allegations in support of his ineffective-assistance claims, does not demonstrate that his counsel possessed, but failed to make, meritorious objections or arguments on his behalf. *See George v. Smith*, 586 F.3d 479, 485 (7th Cir. 2009) (unsupported, conclusory allegations of ineffective-assistance are

"not enough" to establish a valid claim; a petitioner must "show" that performance was deficient and must "affirmatively prove" actual prejudice) (quoting *Strickland*, 466 U.S. at 693).  Even assuming that counsel's performance was somehow deficient, Anderson does not show that there is any reasonable probability that the result of his trial would have been different or that he was actually prejudiced by his counsel's performance.  Based on this record, Anderson fails to demonstrate that the state court's application of *Strickland* was objectively unreasonable. Accordingly, Anderson is not entitled to relief on this claim.  Because Anderson has failed to establish a valid claim for relief, his petition must be denied.

## VII.        Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, the petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but

16

also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, that's not necessary here.  For the reasons already stated, the court concludes that Anderson has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that:

I.      The federal habeas corpus petition filed by Jerry L. Anderson is DENIED and this case is DISMISSED with prejudice.

II.      A certificate of appealability is DENIED.  If petitioner wishes he may seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 16th day of November, 2015.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge